IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. **03-cv-00810-JLK-BNB**

**KATHRYN L. PROFFITT,**

        Plaintiff,

v.

**BOB CORNUKE, an individual,**
**B.A.S.E. INSTITUTE, a Colorado corporation,**
**ANCHOR PRODUCTIONS, JV, and**
**GLOBAL PUBLISHING SERVICES, INC.**

        Defendants.

_____

_____

ORDER ON MOTIONS TO DISMISS AND TO STRIKE
_____

_____

KANE, J.

        This matter is before me on renewed Motions to Dismiss by Defendants and

Defendant Global Publishing Services' related Motion to Strike.  Defendants' Motions

to Dismiss are GRANTED in part and DENIED in part.  Global's Motion to Strike Exhibit

A to Plaintiff's Response to Defendants' Motion to Dismiss is GRANTED.

        This case originated as an attempt by Plaintiff, a former ambassador to Malta

during the Clinton administration, to prevent the impending publication and distribution

of a nonfiction book manuscript by Defendant Bob Cornuke and Boulder-based Bible

Archaeology, Research and Exploration Institute (BASE) entitled "The Lost Shipwreck of Paul." According to Plaintiff, she acted as a liaison between Cornuke and the Maltese government during Cornuke's research of the book, and that without her help, the project never could have been completed. Plaintiff claims she contributed significantly to the writing of the book, reviewing and editing the manuscript, and writing "entire portions of chapters of the book."

Concerned about factual inaccuracies in the book and promises made during the course of negotiations that Maltese officials would be given an opportunity to comment on the manuscript before it was published, Plaintiff traveled to Malta one last time after eliciting Cornuke's promise that her final edits would be included in the manuscript and that publication would await her return. While enroute to Malta, however, Plaintiff received word that the book may already have been published – a fact Plaintiff claims Cornuke and BASE refused to confirm or deny. This lawsuit ensued.

Plaintiff's original Complaint asserted claims for breach of contract and copyright infringement only, based on allegations that Defendants had used original material without permission and breached their promise to include her final edits before publication. Plaintiff sought to enjoin publication and/or any further distribution of *The Lost Shipwreck of Paul* until those edits were made. Without the requested relief, she

claimed, the factual errors and inaccuracies in the manuscript threatened to embarrass both her and the government of Malta.

At the time Plaintiff's motion for preliminary injunction was filed, however, it was clear the book was already on bookstore shelves. Given that fact and the nature of Plaintiff's theories of relief (breach of an oral contract and infringement of a copyright not yet granted), I denied the request for preliminary injunction. The parties thereafter engaged in lengthy and substantive settlement negotiations with Magistrate Boland, only to have an agreement in principal dissolve amid mutual and vituperative accusations of bad faith and misconduct.

During the course of settlement negotiations, Plaintiff attempted to leverage her position by filing, but agreeing not to pursue, a Motion for Leave to Amend. The proposed amended Complaint maintained the breach of contract claim, withdrew the copyright claim, and asserted several additional causes of action including claims for defamation, fraud, outrageous conduct, unjust enrichment/quantum meruit, and a claim for treble damages for violating the Colorado Consumer Protection/Deceptive Trade Practices Act. The essence of these new theories of relief would be that the published book's existence in the public domain, together with Defendants' promotion of it, constituted continuing breaches of contract, acts of fraud and defamation, and public deception.

3

When settlement negotiations finally broke down in the fall of 2004, Plaintiff revived her Motion to Amend and I, reluctantly, granted it. *See* Order, dated 11/1/04.  It is Plaintiff's Second Amended Complaint, accepted for filing on November 23, 2004, that forms the basis for these renewed Motions to Dismiss.

I have reviewed the Motions to Dismiss and Global's Motion to Strike, together with the file and the relevant authorities cited for and against the parties' respective positions, and issue the following rulings:

1.    Global's Motion to Strike Exhibit A to Plaintiff's Response (Doc. No. 74) is GRANTED.  Exhibit A contains letters generated during settlement negotiations which were intended for settlement purposes only.  They are not admissible and the authorities cited by Plaintiff in support her position to the contrary are either entirely inapposite or distinguishable on their facts.

2.    <u>Plaintiff's Third, Fourth and Fifth Claims for Relief (defamation, outrageous conduct and deceptive trade practices</u>.  Defendants' various Motions to Dismiss are GRANTED as to Plaintiffs' claims for defamation, extreme and outrageous conduct, and violation of the Colorado Consumer Protection Act for the reasons stated in those Motions:

   •    The allegedly defamatory statements attributed Defendants are either too vague to state a claim for defamation or, if accurately reported, are not

defamatory as a matter of law.  *See Walters v. Linhof*, 559 F. Supp. 1231, 1234 (D. Colo. 1983)(Kane J.)(dismissing and entering judgment against plaintiff on defamation claims based on similar allegations).

•   Plaintiff's claim for outrageous conduct invokes her allegations in support of her other claims for relief with the conclusory assertion that Defendants "engaged in extreme and outrageous conduct" with the "intent of causing [her] to experience grief, shame, humiliation, [etc.]" Second Am. Compl. ¶¶ 60-62.  This is insufficient to state an independent claim for relief.  In *Gard v. Teletronics Pacing Sys., Inc.*, I stated:

> The [outrageous conduct] claim is not some sort of froth to
> be lathered over other claims, but consists of discrete
> elements established in law to prevent the intentional
> infliction of mental suffering. It is not meant to be an
> incantation to augment damages. Proof of the tort of
> outrageous conduct must consist of either an extreme act,
> both in character and degree, or a pattern of conduct from
> which the ineluctable conclusion is the infliction of severe
> mental suffering was calculated or recklessly and callously
> inflicted.

859 F.Supp. 1349, 1354 (D.Colo.1994)(citing *Price v. Federal Express*, 660 F. Supp. 1388, 1396 (D. Colo. 1988)).   Merely invoking allegations supporting variant theories of relief with allegations that they were also "outrageous" and generically intended to harm will not state an independent claim for relief for outrageous conduct under Colorado law.

5

• Plaintiff's allegations in support of her deceptive trade practices claim fail similarly to find purchase under applicable law.  Plaintiff provides no legal citation of any kind to support how her allegations give rise to liability under Colorado's Consumer Protection Act and I can divine none.  The Act is intended and applied to protect consumers against consumer fraud, and not as a stick for  disgruntled business partners or associated entities to wield against each other in private disputes.  *See generally, Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142, 146 (Colo.2003)(CCPA deters and punishes businesses which commit deceptive practices in their dealings with the public by providing prompt, economical, and readily available remedies against consumer fraud).  There are no allegations of actionable *consumer* fraud at all in Plaintiff's Complaint.

3.   <u>Plaintiff's First Claim for Relief - Breach of [Oral] Contract</u>.  While intriguing, Defendants' argument that Plaintiff's First Claim for Relief (Breach of Oral Contract) is subject to dismissal under 17 U.S.C. § 204 is inappropriate for resolution under a Rule 12(b)(6) standard.  The argument, originally raised in Defendants' Motion for Partial Summary Judgment directed to Plaintiff's original

Complaint, has never been addressed on its merits.[1]

Title 17 of the United States Code governs copyrights, and Section 204 of

title 17 is a statute of frauds of sorts governing transfers or conveyances of

copyrights.  Specifically, 17 U.S.C. § 204 provides that "[a] transfer of copyright

ownership, other than by operation of law, is not valid unless an instrument of

conveyance, or a note or memorandum of the transfer, is in writing and signed by

the owner of the rights conveyed or [his] duly authorized agent." According to

Defendants, the "broad editorial rights" Plaintiff claims Defendants promised her

"constitute an [ownership] interest in copyright" that could not be transferred

by oral contract under § 204.

Defendants' argument is premised on the assertion that Plaintiff

"concedes that Mr. Cornuke was the author of the *Shipwreck* book," Mot.

Dismiss at 5, and, as author, that Cornuke had exclusive rights under 17 U.S.C. §

106 to "distribute," "sell" or otherwise "transfer" copyrighted or "derivative

works," which Defendants define to include "heavily edited versions" of the

original.  *Id.*  Characterizing Plaintiff's alleged rights in contract as having been a

"transfer" of rights to prepare "derivative" works, Defendants deny Plaintiff can

---

[1]      While I denied Defendants' Motion for Partial Summary Judgment, I did so
summarily after settlement negotiations failed as part of my order granting Plaintiff's Motion for
Leave to Amend her Complaint.  *See* Order dated 11/1/2004.  Any suggestion the denial was on
the merits and constitutes the law of the case is not well taken.

enforce such a "transfer" unless the transfer was in writing.  I disagree.

Plaintiff's Complaint includes allegations hotly disputing Cornuke's copyrights in *The Lost Shipwreck of Paul*, and neither Plaintiff's Complaint nor her filings to date can fairly be characterized as "conceding" the authorship issue for purposes of copyright "ownership."  Although Plaintiff appears to have dropped her claim for copyright infringement against Cornuke and BASE in her own right, she nevertheless continues to maintain it was she, rather than Cornuke, who authored large tracts of the book.  While the viability of her claims remains to be tested (I note Plaintiff failed to include in her Second Amended Complaint allegations regarding copyright infringement that were included in her original Complaint – including allegations that Cornuke copied articles she had written entitled  "Malta – World War II" and "Holding History and the Winds of Fate" directly into *The Lost Shipwreck of Paul* without her permission)[2] at this stage of the proceedings, they are sufficient to withstand dismissal under § 204 of the copyright Act.

I note the gist of Plaintiff's contract claim is not an assertion that

---

[2]     In this regard, I also note Plaintiff's Second Amended Complaint fails to include allegations from her original Complaint that she recently "submitted a copyright application with respect to her own original writing [in the book], and expect[ed] to receive confirmation of her copyright registration in the next few days."  (Original Compl., ¶ 20.)  Apparently, no copyright registration was forthcoming.

Defendants promised to give her ownership rights in the book, but that Defendants solicited her input and substantial assistance with the book, which she gave, with a promise she would have final approval over how her input and edits were used.  Whether such a promise is enforceable as a matter of law in contract (or as a matter of equity under a theory of quasi-contract/quantum meruit) remains an open question in this case.  That such a promise is unenforceable on grounds it is a contract for the "transfer of copyright ownership" and is not in writing, appears dubious, certainly at this stage of the proceedings.

I deny Defendants' Motions to Dismiss Plaintiff's claim for breach of contract under 17 U.S.C. § 204.  Because I view Plaintiff's quasi-contract/quantum meruit claim as an alternative to the breach of contract claim sounding in equity, I deny the Motions to Dismiss as to that claim as well.

4.    <u>Plaintiff's Second Claim for Relief - Fraud</u>.  I agree the factual underpinnings of Plaintiff's Second Claim for Relief for fraud in inducing her to invest in the project are dubious but will not dismiss the claim outright under a Rule 12(b)(6) standard.  Defendants' assertion that it is unreasonable for Plaintiff to claim she was fraudulently induced to invest her time and $4,000 in the book by representations that it was a "non-profit project" when Plaintiff acknowledges

9

investing $20,000 in the video aspect of the project "for profit" is not a viable grounds for dismissal.  The argument may be revived on a motion for summary judgment, however, and unless Plaintiff comes forward with evidence to support her contention that she was duped into helping Cornuke and BASE believing the venture was not-for-profit rather than a commercial for-profit enterprise, her fraud claims will fail.

5.    Global Publishing Services.  Plaintiff's remaining contract/quasi-contract claims for relief and her claim for fraud are dismissed as to Defendant Global Publishing Services, the publisher and distributor of *The Lost Shipwreck of Paul*, and Global's Motion to Dismiss is GRANTED in its entirety.  There are simply no allegations to support the existence of any duty on the part of the book's publisher to Plaintiff.

**BASED ON THE FOREGOING**, it is ORDERED that the Motion to Strike Exhibit A to Plaintiff's Response to Motions to Dismiss (Doc. 74) is GRANTED.  With the exception of Defendant Global Publishing, the Motions to Dismiss Plaintiff's Second Amended Complaint by Defendant Scherling (Doc. 90) and the remaining Defendants (Doc. 71) are GRANTED in part and DENIED in part.  The Motions are granted as to Plaintiff's Second, Third, Fourth, and Fifth Claims for Relief for defamation, outrageous

conduct, and deceptive trade practices under Colorado's Consumer Protection Act.

The Motions are denied as to Plaintiff's claims for breach of oral contract, fraud and

quasi-contract/quantum meruit.  Plaintiff's claims against Global Publishing are

DISMISSED in their entirety.

This matter will be set for a status conference by separate Minute Order.  Any

request for a referral back to settlement with Magistrate Judge Boland will be granted

upon filing.

Dated September 7, 2005.

BY THE COURT:

**s/John L. Kane**
SENIOR U.S. DISTRICT JUDGE