IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 03-cv-00810-JLK-BNB

KATHRYN L. PROFFITT,

Plaintiff,

v.

BOB CORNUKE, an individual,
B.A.S.E. INSTITUTE, a Colorado corporation,
ANCHOR PRODUCTIONS, JV, and
GLOBAL PUBLISHING SERVICES, INC., and
DOUGLAS SCHERLING, an individual,

Defendants.
_____

**ORDER**
_____

This matter arises on **The Cornuke Defendants' Motion to Recuse Honorable Boyd N. Boland** [Doc. # 152, filed 3/3/06] (the "Motion to Recuse"). The Motion to Recuse, which seeks my disqualification pursuant to 28 U.S.C. §§ 144 and 455, is DENIED.

I.

Disqualification of a judge under 28 U.S.C. § 144 requires the following showing:

> Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceedings.

The statute does not command automatic disqualification. Hall v. Burkett, 391 F. Supp. 237, 240 (D. Okla. 1975). Rather, it is the duty of the judge against whom the affidavit is filed to

pass on its timeliness and legal sufficiency. United States v. Azhocar, 581 F.2d 735, 738 (9th Cir. 1978): Hall, 391 F. Supp. at 240.

The other statute invoked as requiring disqualification--28 U.S.C. § 455--provides in relevant part:

> (a)   Any justice, judge, or magistrate [judge] of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.
>
> (b)   He shall also disqualify himself in the following circumstances:
>
> (1)   Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding . . . .

The determination of a motion to disqualify is committed to the sound discretion of the court. In exercising that discretion, the Tenth Circuit Court of Appeals has said:

> Under § 144, the affidavits filed in support of recusal are strictly construed against the affiant and there is a substantial burden on the moving party to demonstrate that the judge is not impartial. Conclusions, rumors, beliefs and opinions are not sufficient to form a basis for disqualification. Under § 455, the test is "whether a reasonable person, knowing all the relevant facts, would harbor doubts about the judge's impartiality. Moreover, there is as much obligation for a judge not to recuse when there is no occasion for him to do so as there is for him to do so when there is.

United States v. Burder, 964 F.2d 1065, 1070 (10th Cir. 1992)(internal citations omitted).

Similarly, in United States v. Cooley, 1 F.3d 985, 993 (10th Cir. 1993), the circuit court reiterated:

> Thus, in addition to other factors, this and other courts have identified various matters arising in cases where §§ 144, 455(a), or 455(b)(1), which will not ordinarily satisfy the requirements for disqualification . . .: (1) Rumor, speculation, beliefs, conclusions, innuendo, suspicion, opinion, and similar non-factual matters;

> (2) the mere fact that a judge has previously expressed an opinion on a point of law, or has expressed a dedication to upholding the law or a determination to impose severe punishment within the limits of the law upon those found guilty of a particular offense; (3) prior rulings in the proceeding, or another proceeding, solely because they were adverse; (4) mere familiarity with the [parties], or the type of charge, or kind of defense presented; (5) baseless personal attacks on or suits against the judge by a party;
> (6) reporters' personal opinions or characterizations appearing in the media . . .; and (7) threats or other attempts to intimidate the judge.

(Internal citations omitted.)

Especially applicable here is the holding of the United States Supreme Court in <u>Liteky v. United States</u>, 510 U.S. 540, 555-56 (1994):

> It is enough for present purposes to say the following: First, judicial rulings alone almost never constitute a valid basis for a bias or partiality motion. In and of themselves, (*i.e.*, apart from surrounding comments or accompanying opinion), they cannot possibly show reliance upon extrajudicial source; and can only in the rarest circumstances evidence the degree of favoritism or antagonism required . . . when no extrajudicial source is involved. Almost invariably, these are proper grounds for appeal, not for recusal. Second, opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible.

II.

The district judge referred the matter to me for a very limited purpose, as follows:

> Defendant Cornuke's January 4, 2006 Motion to Strike and for Protective Order (Doc. 120) is **REFERRED** to Magistrate Judge Boland for resolution. The Request for Evidentiary Hearing is **DENIED**, but may be reasserted before the Magistrate Judge. The Magistrate Judge has authority to consider and impose sanctions

3

>for any misconduct be finds has occurred on the part of any of these litigants.

Minute Order [Doc. # 127, filed 1/20/06] at ¶2.[1]  Subsequently, two related motions have also been referred to me--(1) the *Cornuke Defendants' Motion to Strike Exhibits A-D and F-M to Plaintiff's Motion for Reconsideration or Alternatively to Place This Matter Under Seal* [Doc. # 141, filed 2/9/06]; and (2) *Plaintiff Kathryn Proffitt's Motion to Seal* [Doc. # 159, filed 3/6/06].

Significantly, the case is not before me for determination pursuant to consent authority under 28 U.S.C. § 636(c), nor has the district judge referred to me for recommendation any dispositive motion.  The referred motions are not dispositive of any of the parties' claims or defenses, nor do they touch upon the merits of the case.  To the contrary, the Cornuke defendants seek an order striking an exhibit to the plaintiff's motion to dismiss the defendants' counterclaims because, they argue, the exhibit contains information related to settlement negotiations and is not admissible under Fed. R. Evid. 408.  The other motions merely seek orders relating to exhibits associated with Cornuke's Motion to Strike.

III.

The Cornuke defendants argue that disqualification is required for the following reasons:

>Magistrate Judge Boland should be disqualified from presiding over any evidentiary hearing or considering these motions due to his extensive and protracted involvement in settlement negotiations and his personal knowledge both of many of the exhibits at issue and of the potential witnesses who may testify.  Furthermore, Judge Boland should be disqualified because his impartiality might reasonably be questioned, and because he has demonstrated a personal bias or prejudice against these Defendants and in favor of Plaintiff.

---

[1]For convenience, I will identify the referred motion as "Cornuke's Motion to Strike."

Motion to Recuse, p.7. Specifically, the Cornuke defendants contend that disqualification is necessary because during the settlement conferences: (1) the Cornuke defendants "laid out intimate details of their strategy for both settlement and trial," *Affidavit of Stephen M. Crampton In Support of Motion to Recuse* [Doc. # 152-3, filed 3/3/06] (the "Crampton Aff.") at ¶14; (2) I discussed with the Cornuke defendants "the so-called letters of apology that are at the center of the evidentiary hearing," and "quizzed [them] about the letters," id.; (3) I "offered [my] opinions as to what would constitute a reasonable [settlement] position and what would not," id. at ¶16; (4) I "engaged in vigorous efforts to persuade [the Cornuke defendants] to settle the case, mentioning a specific dollar amount to be paid to Plaintiff that [I] was convinced would settle [the case]," id. at ¶18; I "both had opportunity to weigh and, upon information and belief, actually weighed the credibility of some of the parties who will testify at the hearing," id. at ¶22; and I reviewed "lengthy settlement statements" in which defense counsel "commented on [the Cornuke defendants'] position on various matters, including the settlement letters which form the crux of the evidentiary hearing set herein." Id. at ¶25.

      The Cornuke defendants correctly report that I was extensively involved in settlement negotiations. I held two separate settlement conferences in this case, each lasting approximately half-a-day. I considered convening a third settlement conference at the request of the plaintiff, but did not after reviewing the parties' confidential settlement statements and determining that the conference would be a waste of resources. See Order [Doc. # 110, filed 10/12/05]. I also was involved in telephone calls concerning settlement. Crampton Aff. at ¶20. With the exception of their unfounded conclusion that I have weighed the credibility of potential witnesses, I do not dispute the Cornuke defendants' description of what occurred at the settlement conferences. I

disagree, however, that my efforts to assist the parties in settlement of the case and the facts which the Cornuke defendants lay out require disqualification.

The Cornuke defendants rely primarily on Omega Engineering, Inc. v. Omega, S.A., 432 F.3d 437 (2d Cir. 2005), a case in which every judge to consider the issue concluded that disqualification was not required, as supporting their argument that disqualification is necessary. In Omega, a magistrate judge had "minimal" involvement in a settlement conference, id. at 443; at the conclusion of the settlement conference the parties reported to the district judge that the case had been settled, id. at 441; thereafter, the settlement fell through, id; and the magistrate judge held an evidentiary hearing on a motion to enforce the settlement and recommended that the settlement be enforced. Id. at 443. The defendant moved to disqualify the magistrate judge from hearing the motion to enforce the settlement, arguing that he "had personal knowledge of disputed facts concerning the negotiation of the settlement." Id. at 442. The magistrate judge denied the motion to disqualify, finding that "his knowledge of the case resulted from his judicial role and, in any event, his involvement in the negotiations was minimal," and the district judge affirmed that decision. Id. at 443.

The Second Circuit Court of Appeals affirmed the district court's determination that disqualification was not necessary, ruling:

> Knowledge gained from the judge's discharge of his judicial function is not a ground for disqualification under 28 U.S.C. § 455(b)(1).
>
> Here, the magistrate judge's knowledge of the Settlement Agreement arose solely from his judicial duty to oversee the settlement conference. He was not involved in the actual negotiations, but simply observed them and provided facilities to

> support the settlement. Since his knowledge was not extrajudicial,
> it was not an abuse of his discretion to decline to recuse himself.

Id. at 447-48 (internal citation omitted).

Similarly in this case, my knowledge of facts concerning the "so-called letters of apology," Crampton Aff. at ¶14, which are at issue here and which the Cornuke defendants wish to strike from the plaintiff's motion to dismiss counterclaims, was obtained solely through my judicial duties in connection with conducting the settlement conferences and related telephone calls. I have no personal, extrajudicial knowledge concerning the letters of apology or any other matter in this case. As the Omega court noted, "[k]nowledge gained from the judge's discharge of his judicial function is not a ground for disqualification under 28 U.S.C. § 455(b)(1)." 432 F.3d at 447-48.

Nor does the fact that my involvement in the judicially sponsored settlement conferences was extensive, and not "minimal" as in Omega, require a different result. The issue referred to me by the district judge for determination is whether certain "so-called letters of apology," which the plaintiff has attached to a motion, must be stricken because they constitute evidence of settlement negotiations offered to prove liability or invalidity of a claim and are inadmissible under Fed. R. Evid. 408. The "so-called letters of apology" were created by the parties in March 2004 as a result of negotiations between Ms. Proffitt, Mr. Cornuke, and their respective counsel. I was not involved in any of those discussions. In fact, according to Cornuke, the "so-called letters of apology" were signed and transmitted to William Neighbors, a private mediator, on approximately March 30, 2004. *Defendant Bob Cornuke's Reply In Support of Motion to Strike and for Protective Order* [Doc. # 139, filed 2/8/06], at pp.3-4. The settlement conferences I was involved

in occurred later--on April 30, 2004, and October 7, 2004. Crampton Aff. at ¶¶11, 15. Thus, I had no involvement in the negotiations leading up to or in the creation of the "so-called letters of apology."[2]

The three other cases cited by the Cornuke defendants as requiring disqualification--Becker v. Tidewater, Inc., 405 F.3d 257 (5th Cir. 2005); Woodson v. Surgitek, Inc., 57 F.3d 1406 (5th Cir. 1995); and Tucker v. Calloway County Bd. of Ed., 136 F.3d 495 (6th Cir. 1998)--all concerned the disqualification of district judges who were involved in settlement discussions and who would preside over a trial on the merits. Those cases are easily distinguished; in this case, all matters concerning the determination of the merits of the parties' claims and defenses have been reserved by the district judge.[3]

The Cornuke defendants also seek my disqualification based on personal bias and prejudice. The first assertion of bias is based on the following:

> After entry of the Court's Order of Referral of these Defendants' motion to strike and for protective order and Plaintiff's motion for reconsideration and for an evidentiary hearing to Magistrate Judge Boland, I awaited entry of a Minute Order setting forth deadlines for responding to Plaintiff's motions.
>
> Instead of entering a Minute Order, by Order dated January 20 Magistrate Judge Boland set the matter for a hearing on March 3,

---

[2]The Cornuke defendants also argue that Cornuke's Motion to Strike must be granted based on a prior ruling by the district judge and the doctrine of law of the case. Cornuke's Motion to Strike, p.2. My involvement in settlement discussions is totally unrelated to the law of the case issue.

[3]There is nothing unusual about this case. Magistrate judges in this district regularly conduct settlement conferences and thereafter rule on non-dispositive motions, including scheduling motions, motions to amend pleadings, discovery related motions, motions to strike witnesses and/or exhibits, motions of counsel to withdraw, motions to enforce settlements, and the like.

> 2006, and for a status conference on February 6, 2006 'to address the form of the hearing on March 3, 2006.' Had Judge Boland not intended to grant the motion for evidentiary hearing, there would have been no need for a hearing on these motions.
>
> Given the abbreviated schedule and the need to respond to the motion of Plaintiff, I hastily prepared a response combining motions to strike the newly filed exhibits as well as a motion to reconsider a separate portion of the same order on which Plaintiff had sought reconsideration.
>
> At the status conference on February 6, Judge Boland made a point of noting our having violated Local Rule ___ by combining motions in a single filing. Judge Boland failed to note that Plaintiff had also combined motions in her filing, however.

Crampton Aff. at ¶¶5-7.

The briefing of motions in this district is a matter controlled by local rule of practice 7.1C, D.C.COLO.LCivR, which provides:

> Excluding motions filed under Fed. R. Civ. P. 56 or 65, a motion involving a contested issue of law shall state under which rule or statute it is filed and be supported by a recitation of legal authority incorporated into the motion. The responding party shall have 20 days after the filing date of the motion, or such lesser or greater time as the court may allow, in which to file a response. The moving party may file a reply within 15 days after the filing date of the response, or such lesser or greater time as the court may allow. Nothing in this rule precludes a judicial officer from ruling on a motion at any time after it is filed.

Cornuke's Motion to Strike was filed on January 4, 2006, but it was not referred to me until January 20, 2006. Consequently, I did not enter a minute order establishing a briefing schedule, but relied instead on the schedule established by the local rule. The plaintiff filed her response to Cornuke's Motion to Strike on January 24, 2006, as required by D.C.COLO.LCivR 7.1C. The Cornuke defendants had 15 days thereafter, or until approximately February 8, 2006,

within which to file their reply. The hearing on Cornuke's Motion to Strike was not set to occur until March 3, 2006. There was no "abbreviated schedule" in place.

The minute order entered on January 30, 2006, indicates my intention to discuss at the February 6 status conference "the form of the hearing on March 3, 2006." The minute order notified all parties that I would address on February 6 the issue of whether to accept evidence at the hearing on March 3, 2006. The Cornuke defendants made arguments at the status conference about the propriety and necessity of an evidentiary hearing.

The Cornuke defendants also allege bias because I "made a point of noting" that the Cornuke defendants had violated D.C.COLO.LCivR 7.1C by filing the *Defendant Bob Cornuke's Reply In Support of Motion to Strike and for Protective Order, Response In Opposition to Plaintiff's Motion for Reconsideration and for Evidentiary Hearing, Motion to Strike Exhibits A-D and F-M to Plaintiff's Motion for Reconsideration or for Order Placing Them Under Seal, and All Cornuke Defendants' Motion for Reconsideration* [Doc. # 133, filed 2/3/06] (the "February 3 Filing"). The February 3 Filing is a blatant violation of the local rule, however, which provides that "[a] motion shall not be included in a response or reply to the original motion. A motion shall be made in a separate paper." D.C.COLO.LCivR 7.1C. Although it is true that the plaintiff also violated the local rule by filing a combined response and motion, see *Proffitt's Response to Order to Show Cause: Motion for Reconsideration/Clarification and Request for Evidentiary Hearing* [Doc. # 124, filed 1/17/06], neither the order to show cause nor Proffitt's motion for reconsideration were referred to me, and it would be presumptuous in the extreme for me to enter an order concerning a matter which the district judge has reserved to himself.

In any event, these assertions of bias all concern "prior rulings in the proceeding" and are not a proper basis for disqualification. Liteky, 510 U.S. at 555; Cooley, 1 F.3d at 993.

The Cornuke defendants also allege bias based on their perception of my demeanor at the settlement conferences:

> At the first settlement conference . . . both these Defendants and their counsel were taken aback by the cold and seemingly hostile attitude of Magistrate Judge Boland upon his first meeting with them.
>
> The impression these Defendants and their counsel received from Judge Boland was that he considered them somehow at fault before even presenting their case, and that they would have to prove to him why they should not accede to Plaintiff's demands.
>
> The impression left by the judge was so strong that upon learning that a second settlement conference had been set before Judge Boland, these Defendants wrote him through counsel to ask that a different Magistrate Judge be assigned to preside over the conference.

Crampton Aff. at ¶¶11-13.

No previous motion to disqualify was filed. The first settlement conference occurred on April 30, 2004. This Motion to Recuse was filed on March 3, 2006, nearly two years later. This extraordinary delay belies the legitimacy of the Cornuke defendant's asserted concern. See generally Omega, 432 F.3d at 448. In any event, this case is pending in a United States district court, and I am a federal judge. A settlement conference is a serious matter. The Cornuke defendants' non-factual assertion and belief that I was "cold" and "hostile," unsupported by any evidence of bias, will not satisfy the requirements for disqualification. Cooley, 1 F.3d at 993.

11

Finally, the Cornuke defendants argue:

> Perhaps the best example of Judge Boland's intimate knowledge of the facts, and the dangers such knowledge present, is found in the curious e-mail of Ms. Goodner to Detective Sheets. There, Ms. Goodner wrote that Judge Boland told Plaintiff that these Defendants had "threatened" a Maltese General and "behaved in a very odd and suspicious matter." The characterization of these Defendants' confidential statements to Judge Boland as "threats" is, at a minimum, indicative of impartiality. To further describe these Defendants' behavior as "very odd" and "suspicious" is even worse.

Motion to Recuse, p.10 (internal citations omitted).[4]

I have never met Ms. Goodner, or spoken to her, or communicated with her in any way, and there is no evidence or suggestion to the contrary. Ms. Goodner was not at either settlement conference. Ms. Goodner's characterizations are not attributed to me. In short, the allegations concerning Ms. Goodner are "[r]umor, speculation, beliefs, conclusions, innuendo, suspicion, opinion, and similar non-factual matters" which do not satisfy the requirements for disqualification. Cooley, 1 F.3d at 993.

IV.

The Cornuke defendants have failed to establish any basis for my disqualification. I hold no bias nor enmity against the defendants, nor am I prejudiced in favor of the plaintiff. Under these circumstances, I am required to continue to serve pursuant to the Order of Reference entered by the district judge. See Burder, 964 F.2d at 1070 (holding that "there is as much obligation for a judge not to recuse when there is no occasion for him to do so as there is for him

---

[4]Specifically, Ms. Goodner wrote in an e-mail to an Arapahoe County police detective that she feared for her safety based upon, among other things, an e-mail from Mr. Cornuke "sent in the early morning hours the morning AFTER the mediation in front of the magistrate where they threatened the General of armed forces and behaved in a very odd and suspicious manner, even to the magistrate." Motion to Recuse, at Exh.1.

to do so when there is").

The Motion to Recuse is DENIED.

Dated March 13, 2006.

                                                 BY THE COURT:

                                                 s/ Boyd N. Boland
                                                 United States Magistrate Judge